UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MALENA KAY BERGMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO.   C05-5405FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 14, 2006 |

Plaintiff, Malena Kay Bergman, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-two years old.[1] Tr. 34.  She has a college education and past work experience as a school bus driver, information desk clerk/fee collector, and teacher's aide. Tr. 13, 83, 90,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

105, 557.

Plaintiff filed applications for disability insurance benefits and SSI benefits on December 10, 1998, and February 10, 2000, respectively, which were denied initially and on reconsideration. Tr. 12, 24.  She requested a hearing, which was held before an administrative law judge ("ALJ") on November 13, 2001. Tr. 24.  On December 26, 2001, the ALJ issued a decision, finding plaintiff capable of performing other work existing in significant numbers in the national economy, and therefore determining her to be not disabled. Tr. 24-33.  Plaintiff's request for review was denied by the Appeals Council on March 22, 2002. Tr. 39.  It does not appear that any further appeal was taken by plaintiff.

On April 8, 2002, plaintiff filed two more applications for disability insurance and SSI benefits, alleging disability as of March 22, 2002, due to Sjogren's syndrome, suspected scleroderma of the esophagus, Raynaud's syndrome, idiopathic hypersomnia, and migraines. Tr. 12-13, 34, 65-67, 77, 542-44. Both applications again were denied initially and on reconsideration. Tr. 12, 34-35, 41, 47, 539-40, 545, 549.  Plaintiff requested a hearing, which was held before a different administrative law judge on October 28, 2004. Tr. 552.  Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert. Tr. 552-92.

On January 25, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

> (1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;
>
> (2)   at step two, plaintiff had "severe" impairments consisting of Sjorgen's syndrome, arthritis and idiopathic hypersomnia;
>
> (3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and
>
> (4)   at step four, plaintiff had the residual functional capacity to perform a modified range of light work, and thus was capable of returning to her past relevant work.

Tr. 18-19.  Plaintiff's request for review was denied by the Appeals Council on April 14, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. §§ 404.981, 416.1481.

On June 17, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits, or, in the alternative for further administrative proceedings, because:

(a) the ALJ erred in discounting the report of an occupational therapist regarding plaintiff's physical capacities; and

(b) the ALJ improperly discredited the opinion of plaintiff's treating physician regarding the existence of fibromyalgia as a "severe" impairment affecting her ability to perform work activities on a reliable and full-time basis.

For the reasons set forth below, however, the undersigned finds the ALJ did not err in determining plaintiff to be not disabled, and therefore recommends the court affirm the ALJ's decision.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Properly Discounted the Occupational Therapist's Report

Plaintiff argues the ALJ erred in rejecting the report of a vocational rehabilitation therapist, Donna Umali, who evaluated plaintiff's physical capacities in late August, 2004. In that report, Ms. Umali found the results of the evaluation indicated plaintiff demonstrated the ability to perform sedentary work "on a part time basis," which was considered to be "up to 4 hours a day." Tr. 298. With respect to Ms. Umali's report, the ALJ found as follows:

> The claimant underwent a physical capacity evaluation on August 30, 2004. She demonstrated a capacity to function in the sedentary category of work on a part-time basis. The assessment lasted 3 hours. It was projected she could sit 3 to 4 hours in an 8-hour day, stand 3 to 4 hours in an 8-hour day and walk 3 to 4 hours in an 8-hour day. It was projected that she could alternately sit/stand/walk 3 to 4 hours in an 8-hour day. She could lift 15 pounds occasionally and could occasionally squat, bend, crouch, crawl, climb and kneel. Dr. [J. Michael] Grubb[s] concurred with the findings. . . . The undersigned finds that the conclusion that the claimant can work only part-time is not supported by the testing and is inconsistent with the claimant's reported activities. The conclusion is speculative as the assessment was only 3 hours. The limitation to part-time work appears to be based on the claimant's claims of fatigue. Testing revealed functional grip strength, functional range of motion, and functional gait and balance. This test was prior to recent studies mentioned above that find her to be [sic] sleep

REPORT AND RECOMMENDATION
Page - 3

>   tendencies to be "normal". Upper and lower extremity strength were within normal limits. The claimant's daily activities reflect a capacity to function on a full-time basis. She cares for her disabled son, performs all daily activities independently, attends exercise classes and has built a deck.

Tr. 17, 297-305. Specifically, plaintiff asserts the ALJ erred because the reasons set forth above are not specific and legitimate, let alone clear and convincing.

Ms. Umali, however, is not an "acceptable medical source" as that term is defined in the Social Security Regulations, and thus may be given less weight than those of acceptable medical sources. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). The opinions of sources such as Ms. Umali instead generally are treated in the same manner the testimony of lay witnesses. See 20 C.F.R. § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work).

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Accordingly, contrary to plaintiff's assertion, the ALJ was not required to give clear and convincing or specific and legitimate reasons for rejecting Ms. Umali's report and conclusions. Rather, the ALJ only needed to provide "germane" reasons for doing so, which he did here. Plaintiff argues the testing of her physical capacities was a valid indicator of her inability to work full-time, because she gave consistent and good effort throughout the evaluation. While plaintiff's efforts certainly may have been consistent during the evaluation and the ALJ did not appear to question that effort, the ALJ discounted Ms. Umali's ultimate conclusion as speculative because the actual evaluation lasted for only three hours, and thus appeared to be based to a large extent on plaintiff's subjective complaints of fatigue. Indeed, the testing performed by Ms.

REPORT AND RECOMMENDATION
Page - 4

Umali showed plaintiff to be fairly functional as noted by the ALJ. Tr. 297-305. In addition, plaintiff has not challenged the ALJ's determination to discount her credibility.

Plaintiff further argues the most recent sleep monitoring testing performed in early October 2004, confirmed the presence of daytime sleep. While it is true that testing suggested plaintiff was "quite sleepy during the first nap," overall she "passed the maintenance wakefulness test when averaged throughout the entire day." Tr. 320. Thus, the most recent sleep testing, along with testing done previously in late January, 2004, revealed "normal levels of alertness." Tr. 319-20, 323, 362, 523-24. Indeed, it was noted during the testing done in January 2004, that despite plaintiff's "subjective complaints that she fell asleep every day on her sleep diary," the maintenance wakefulness test indicated "that she in fact" had "normal levels of alertness and did not fall asleep on any nap." Tr. 523-24. In other words, regardless of what plaintiff felt subjectively, objectively the testing showed that no naps or sleep was recorded. Tr. 362.

Next, plaintiff argues that the only other evidence in the record regarding her physical capacity to perform work consists of a physical residual functional capacity assessment form completed by a non-examining physician in mid-April 2003. The findings contained in that form are substantially the same as those physical functional limitations adopted by the ALJ in his assessment of plaintiff's residual functional capacity. Tr. 17, 142-46. Plaintiff implies it was improper for the ALJ to have relied on those findings because they came from a non-examining physician. While it is true the opinions of non-examining physician are not given as much weight as those of treating or examining physicians, as discussed above, an ALJ also may give less weight to the opinions of those who are not "acceptable medical sources." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Thus, it was not error for the ALJ to give greater weight to do so here.

Plaintiff also implies it is not proper to discount the opinion of a "medical professional" based on the claimant's lack of credibility. A physician's opinion premised on a claimant's subjective complaints, however, properly may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). In addition, although it may be that Ms. Umali is a "medical professional" in some sense of

1  that phrase, again, as discussed above, she is not an "acceptable medical source" as that term is defined in
2  the Social Security Regulations. Accordingly, it was not improper for the ALJ to discount the report and
3  conclusions of Ms. Umali because they were based on plaintiff's complaints of fatigue.

4        Plaintiff asserts the ALJ failed to articulate how the activities she engaged in adversely impacted the
5  conclusions reached by Ms. Umali. While there may be some issue as to exactly how well plaintiff was able
6  to perform her activities of daily living, the fact that she was able to participate independently in such
7  activities at least to some extent, cared for her disabled son, attended exercise classes, and built a deck[2] (see
8  Tr. 98-101, 221-21A, 238-39, 515), do call into question Ms. Umali's opinion that she was limited solely to
9  part-time work. Although it is true that in discounting a claimant's credibility based on activities of daily
10 living, the claimant must be "able to spend a substantial part of his or her day performing household chores
11 or other activities that are transferable to a work setting," that standard is not applicable in the context of an
12 ALJ's evaluation of lay witness testimony. See Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).
13 Thus, an ALJ is not required to provide the same level of specificity in setting forth his reasons for
14 discounting such testimony, as is required for discounting a claimant's testimony.

15       Lastly, plaintiff points to the fact her treating physician, Dr. Grubbs, concurred with Ms. Umali's
16 findings. While it does appear Dr. Grubbs checked a box next to the phrase "Concur with the findings in
17 this report" on the form completed by Ms. Umali summarizing her findings and conclusions (Tr. 311), he
18 did not indicate on that form his reasons for doing so. In any event, although this could be said to be one
19 factor that would tend to support Ms. Umali's opinion regarding plaintiff's ability to work, as discussed
20 above, the ALJ set forth many other "germane" reasons for discounting that opinion. As such, the ALJ did
21 not err in rejecting the report and conclusions of Ms. Umali.

22 II.    <u>The ALJ Did Not Err in Discrediting the Opinion of Plaintiff's Treating Physician</u>

23       Plaintiff's second ground for challenging the ALJ's disability determination is not entirely clear.
24 First, plaintiff argues the ALJ improperly discredited the opinion of her "treating source" regarding "the
25 existence of fibromyalgia as a 'severe' impairment affecting her ability to perform work activities on a
26 reliable basis." Plaintiff's Opening Brief, p. 11. It does not appear, however, that plaintiff was ever

---

[2] Plaintiff asserts there is no evidence in the record that she actually built a deck. Plaintiff's physical therapist specifically stated, however, that she reported "she was injured on January 26, 2003 when she was holding posts for the deck <u>that she was building</u>." Tr. 515 (emphasis added).

REPORT AND RECOMMENDATION
Page - 6

diagnosed as having fibromyalgia. Indeed, nowhere in the record is there any mention of that condition. Accordingly, the undersigned finds the ALJ did not err in this regard.

Plaintiff also asserts the ALJ offered no reasons for rejecting the opinion of her treating physician that she could only work part-time in a sedentary occupation. Id. at p. 12. The undersigned assumes that plaintiff here is referring to the signature of Dr. Grubbs, discussed above, indicating he concurred with the findings contained in Ms. Umali's physical capacities evaluation report. While the ALJ noted that Dr. Grubbs concurred with those findings, he did not expressly state he was rejecting that concurrence, nor did he provide any reasons for doing so. Plaintiff argues this was improper.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d

REPORT AND RECOMMENDATION
Page - 7

1 Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

2      In general, more weight is given to a treating physician's opinion than to the opinions of those who
3 do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
4 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
5 "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
6 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan, 242 F.3d at 1149.
7 An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining
8 physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial
9 evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242
10 F.3d at 1149.

11      Although it certainly would have been better for the ALJ to expressly state why he was not adopting
12 Dr. Grubbs' concurrence with the findings contained in Ms. Umali's report, as noted above, the court may
13 draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755.  Thus, it is
14 not unreasonable to infer from the ALJ's opinion that for the same reasons he found Ms. Umali's report and
15 conclusions to be unsupported by the evidence in the record, he deemed Dr. Grubbs' concurrence to be
16 unsupported as well.  In addition, while it is true that a higher standard must be met to reject the opinion of
17 a treating physician than a non-acceptable medical source, there is little in the diagnostic and treatment
18 notes provided by Dr. Grubbs to support his concurrence. Tr. 311, 408-09, 416, 425; see Batson , 359 F.3d
19 at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.  As discussed above, furthermore, other
20 than checking a box, Dr. Grubbs failed to set forth any basis for that concurrence in the summary report. Tr.
21 311; see Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized
22 medical opinions over check-off reports).  The undersigned thus also finds the ALJ did not err here.

## CONCLUSION

24      Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was
25 not disabled, and should affirm the ALJ's decision.

26      Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
27 the parties shall have ten (10) days from service of this Report and Recommendation to file written
28 objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

REPORT AND RECOMMENDATION
Page - 8

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 14, 2006**, as noted in the caption.

      DATED this 17th day of March, 2006.

                                      Karen L. Strombom
                                      United States Magistrate Judge